**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2354
_____

STATE FARM FIRE AND CASUALTY COMPANY

v.

JASON HINES, Individually and doing business as
Dedicated Business Systems International LLC;
DEDICATED BUSINESS SYSTEMS INTERNATIONAL, LLC;
TRI-STATE COMMUNICATION SERVICES LLC,
doing business as US Voice and Data, LLC

Jason Hines; Dedicated Business Systems International, LLC,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-18461)
District Judge: Honorable Madeline C. Arleo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 1, 2022
_____

Before: JORDAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed: October 14, 2022)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

This insurance coverage dispute concerns the scope of two commercial liability insurance policies. Those policies cover advertising injuries arising out of infringement upon another's *trade dress*, but they exclude injuries arising out of *trademark* infringement. When the insured was sued for trademark infringement, the insurer initially agreed to defend the insured with reservations, but now the insurer wishes to withdraw from that representation. The insurer sued, seeking a declaratory judgment, and the District Court entered summary judgment in its favor: the policies' coverage of trade dress infringement claims did not extend to the suit for trademark infringement. On *de novo* review, we will affirm that judgment.

## I. FACTUAL BACKGROUND

### A. The Insurance Policies

The two commercial insurance policies at issue were issued by State Farm Fire and Casualty Company, an Illinois corporation with a principal place of business in Bloomington, Illinois. In 2013, both policies used the same language in providing coverage for "personal and advertising injury." Businessowners Policy at 23 (App. 463); Umbrella Policy at 2 (App. 625). That coverage included the obligation to defend against suits arising out of infringement "upon another's copyright, *trade dress* or slogan in your 'advertisement.'" Businessowners Policy at 36 (App. 476) (emphasis added); Umbrella Policy at 16 (App. 639) (emphasis added). But that advertising injury coverage excluded claims "[a]rising out of the infringement of copyright, patent, *trademark*, trade secret or other intellectual property rights." Businessowners Policy at 28 (App. 468) (emphasis added); Umbrella Policy at 7–8 (App. 630–31) (emphasis added). Under both policies, that exclusion did not apply to infringement in an advertisement "of copyright, *trade*

2

*dress* or slogan."  Businessowners Policy at 28 (App. 468) (emphasis added); Umbrella Policy at 7–8 (App. 630–31) (emphasis added).

Dedicated Business Systems International ('DBSI'), a limited liability company organized in New Jersey with no Illinois-citizen members, purchased those policies from State Farm for itself and its officers when conducting DBSI business.

### B.  The Underlying Lawsuit

For a time, DBSI was an authorized reseller of Avaya communications technology.  Avaya holds certain trademarks associated with its communications technology, and two of those trademarks are registered with the U.S. Patent and Trademark Office.  The authorized-reseller arrangement terminated in 2013, but DBSI and one of its officers allegedly continued to access Avaya software license portals afterwards – without Avaya's authorization.  By doing so, they were allegedly able to distribute pirated licenses to customers for a handsome profit, all the while using Avaya's trade name and marks to falsely represent that the software was "valid and authorized by Avaya."  Second Amended Avaya Compl. ¶¶ 44, 47 (App. 657).

Believing that DBSI engaged in a "massive illegal software piracy operation," Avaya sued DBSI and its officer.  *Avaya Inc. v. Pearce*, Case No. 3:19-cv-00565 (N.D. Cal.); Second Amended Avaya Compl. ¶¶ 1–5 (App. 644–45).  Avaya's eight-count complaint included federal claims for trademark infringement and copyright infringement.  In response, State Farm sent a letter to DBSI and the officer to inform them that it had appointed counsel to defend them in the Avaya lawsuit.  But that letter reserved State Farm's right to withdraw if it determined that the claims were outside of the policies' scope.

### C. The Current Case

Consistent with that reservation of rights, State Farm initiated this lawsuit for a judgment declaring that it did not have to defend or indemnify DBSI and its officer in the Avaya lawsuit. *See* 28 U.S.C. § 2201; Fed. R. Civ. P. 57. Because the parties were completely diverse and because the amount in controversy is not to a legal certainty $75,000 or less, the District Court exercised diversity jurisdiction. *See* 28 U.S.C. § 1332; *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (2016) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).

To obtain a declaratory judgment, State Farm moved for summary judgment. That motion hinged on whether Avaya's complaint alleged a claim "arising from trademark or copyright infringement." Letter Order at 4 n.4 (June 30, 2021) (App. 4). The District Court determined that State Farm's policies did not cover Avaya's trademark or copyright infringement claims, and on that basis, it entered summary judgment for State Farm.

DBSI and the officer timely appealed that final order, bringing this matter within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004) ("A summary judgment that fully disposes of all claims among all parties is final." (quoting 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.28 (2d ed. 1992))). On appeal they dispute only the denial of coverage for the trademark infringement claim.

## II. DISCUSSION

Under New Jersey law, which governs this dispute,[1] State Farm's duty to defend DBSI and Hines in the underlying lawsuit depends on whether the insurance policies'

---

[1] A federal district court evaluating state law claims applies choice-of-law principles from the state in which it is located, here New Jersey. *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

4

language covers the underlying lawsuit's allegations. *See Flomerfelt v. Cardiello*, 997 A.2d 991, 998 (N.J. 2010). Undefined terms in insurance policies take on their "plain and ordinary meaning." *Id.* at 996 (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992)). And here, neither policy specifically defines the two critical terms – 'trade dress' infringement and 'trademark' infringement.

By their plain language, the policies nevertheless distinguish the two terms. Ordinarily, different terms represent different ideas. *See Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 64 (D.N.J. 2007) (citing *Prather v. Am. Motorists Ins. Co.*, 67 A.2d 135, 138 (N.J. 1949)); *see also Prather*, 67 A.2d at 138 ("[T]he construction which gives a reasonable meaning to all [the policy's] provisions will be preferred to one which leaves a portion of the writing useless or inexplicable."). The policies cover advertising injuries arising from trade dress infringement, but not from trademark infringement. By referring to both the infringement of trademark and trade dress, the policies contemplate different meanings for those terms.

As a matter of intellectual property law, the concepts of trademark and trade dress have much in common, with trade dress often treated as a subspecies of trademark.[2] But

---

313 U.S. 487, 496–97 (1941); *see also Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). Under New Jersey's choice-of-law principles, New Jersey's substantive law will apply when there is no actual conflict between multiple states interested in the litigation. *See Cont'l Ins. Co. v. Honeywell Int'l, Inc.*, 188 A.3d 297, 311 (N.J. 2018). But if an actual conflict presents, New Jersey applies the most-significant-relationship approach of the Restatement (Second) of Conflict of Laws. *See id.* at 318. Here, no conflict between interested states readily appears, and the parties apply New Jersey law in interpreting the disputed State Farm policies.

[2] Under the Lanham Act, a 'trademark' includes "any word, name, symbol or device or any combination thereof" adopted by a person to "identify and distinguish" that person's goods and to "indicate the source of the goods." 15 U.S.C. § 1127. And while the Act also protects 'trade dress,' *see id.* § 1125(a)(3), federal courts have understood that term to describe "the overall look of a product," from packaging to design. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255–56 (3d Cir. 2021) (quoting *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014)); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (recognizing the

5

this case does not concern trademark and trade dress in the abstract; it concerns insurance policies that exclude *claims* for trademark infringement and cover *claims* for trade dress infringement. Thus, this dispute depends on the differences between claims for trademark infringement and trade dress infringement.

Claims for trademark infringement and trade dress infringement have distinct elements. A claim for trademark infringement has three elements: (i) a valid and legally protectable mark; (ii) owned by the plaintiff; (iii) that, when used by the defendant to identify goods or services, "is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). A claim for trade dress infringement has different elements. It requires an articulation of the specific features of the distinct trade dress sought to be protected followed by proof that an infringing design is nonfunctional; distinctive, either inherently or through secondary meaning; and likely to confuse consumers. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997), and *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007)); *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8.3 (5th ed. 2022 update) ("All courts agree that the elements of the alleged trade dress must be clearly listed and described. Only then can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement." (footnote omitted)).

---

extension of trade dress protection from "packaging" to include "the design of a product"). Accordingly, a trademark, as a distinct mark or emblem, may contribute to a product's trade dress, its overall look.

For State Farm to have a duty to defend the Avaya lawsuit against DBSI and its officer, Avaya's operative complaint must potentially state a claim for trade dress infringement. *See Flomerfelt*, 997 A.2d at 998.[3]  But it does not.  The operative complaint never mentions 'trade dress.'  Nor does it provide a basis for reasonably inferring such a claim.  It does not contain the requisite description of the specific features of a trade dress that it seeks to protect. *See Fair Wind Sailing*, 764 F.3d at 309. Nor does it include allegations regarding two essential elements of a trade dress infringement claim: nonfunctionality and distinctiveness.  Thus, Avaya's complaint lacks allegations necessary for a trade dress claim, and the District Court did not err in applying New Jersey law to conclude that State Farm did not have to defend DBSI and its officer in the Avaya litigation. *Cf. Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 567 (5th Cir. 2015) (holding that an advertising insurance policy for trade dress did not cover a trademark infringement counterclaim because that counterclaim did not mention 'trade dress' and did not otherwise allege that the person asserting the counterclaim held a trade dress).

\* \* \*

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

[3] State Farm sought declaratory judgment on the basis of Avaya's second amended complaint, and the District Court granted summary judgment based on that complaint. Avaya later amended that complaint, and the scope of this appeal relates only to State Farm's coverage obligations before that amendment.